Good morning, Your Honors. May it please the Court, my name is Craig Corbett. I am here as Counsel for the Appellants in the Abelman-Fairhaven Utility Savings Appeal, a separate appeal from the Texas-Ohio case, although both arising from the District of Nevada with opinions by District Judge Pro. I am going to be dividing my time with Mr. Blake Harper, who is seated behind me, who is Counsel for Texas-Ohio, and the distinction between the two cases is that in the Abelman-Fairhaven case, we represent a class of retail direct purchasers, a California class of everybody who was a retail end-user direct purchaser. That class is defined to include not only people who are retail end-users, but also to include resellers. However, the class representatives are only end-users, and I am only going to address the retail end-user issues, and Mr. Harper will address the issues as they pertain to the resellers like Texas-Ohio. Could I just ask for clarification? I understand that at least one of the entities is a power co-op. Is that considered an end-use consumer? Doesn't it then distribute that power to other, to its members? Your Honor, I've heard that contention raised by the defendants. I think that's a factual issue. I don't personally represent that client, but the counsel who does, based on that, believes that it is an end-user, and for that reason, we made that allegation in the complaint. But regardless, the other two end-users, one, Abelman, is a glassblower in Southern California, and the other, Fairhaven, is a co-generator with facilities up in Northern California, which buys gas both for its own use and to convert into electricity. But our position, as a member of our class, as we've defined it, although obviously they would opt out of it, but it includes everybody who is in that position. And so my arguments are really the same in terms of the jurisdiction or non-jurisdiction and so forth as were made earlier by counsel for Gallo and counsel for Sierra Pacific. And, of course, I fully endorse those, and I don't want to really repeat them unless the Court has particular questions, but I would like to just address a couple of issues that have come up and maybe are more unique to us. First of all, like the Sierra Pacific case, although a different judge in the District of Nevada, Judge Pro, in our case, this case comes here on the grant of a motion to dismiss, which was granted without leave to amend. And we have a number of allegations in our case about how this market actually operates, which are really at odds to the description that the defendants gave both to the district court and to this court, and that you've heard earlier this morning about the way that it does operate. And it seems to me that the truth or not of those allegations about how this market actually operates are really fundamental to at least the issue here of whether the filed rate doctrine applies, because this Court's decisions in Grays Harbor and Snohomish and most recently in the DuVal v. Quest case, I think really stand for the propositions that even if you have a market-based regime and you can extend the filed rate doctrine to a situation with a market-based regime, that there still needs to be an appropriate level of review and regulation by the agency in order to really determine that, in fact, that is a market that is operating and functioning in the correct manner. Otherwise, you've really got nothing. And there has been no case that I am aware of, certainly, that has ever extended the filed rate doctrine to a situation like this where there has been close to zero agency review of anything and where the agency itself has says it has no power or authority to review these gas sales and that it's not going to do it. That would — that, on the facts of this case, upholding that determination would go far beyond anything that has ever occurred with respect to the filed rate doctrine. And — And regarding what you just said about where the agency itself has said, what do you reference there? Well, this actually ties into the point about whether plaintiffs could have gotten relief at the agency. And I will, with your indulgence, repeat just one thing that Counsel for Gallo said earlier, which is that what is — the arguments that are being made here are diametrically opposed to what has — the same representations that these companies made before FERC. During the energy crisis in this state, there were consumer groups and others who went to FERC and said, help us. You've got to do something about this. And there were responses filed — responses filed by appellees in this court, Duke and Kana and El Paso, in which they said — and I'll quote from Duke and Kana first — the legal constraints on the Commission's regulatory authority over natural gas sales limit, as a practical matter, the extent to which the Commission could regulate gas prices. A limited number of gas sellers, affiliated marketers, are regulated, while the vast remainder are not. First sales of gas were deregulated by statute long ago, and the Commission's residual regulatory power over gas sales prices is now limited to the Commission's sales for resale authority. Similarly, the Commission has no statutory power to set retroactive rates, nor can it order retroactive refunds. That's what Duke and Kana said. Here's what El Paso said. Just one sentence. FERC's current gas sales jurisdiction is limited to a small universe. Sales by interstate pipelines pursuant to order number 636, and sales by pipeline marketing affiliates pursuant to order number 547. So here's what FERC said in response, and I think this addresses your question, Your Honor. They agreed with that. FERC said — and this is from the order dismissing the complaints, in that matter. It's 101 FERC, paragraph 61,161, paragraph 10. Under the Wellhead Decontrol Act and the Commission regulations implementing that act, natural gas prices have been effectively decontrolled. Therefore, the Commission declines to take the requested action on the instant complaints. FERC was telling these people, and they would say exactly the same thing if people who came there with gas purchases that were outside of FERC's jurisdiction — FERC is saying, we have no power to do anything. Sorry. Now what is the void, then, that can fill the gap between this no-law zone, as Your Honor accurately used a term a while ago? What is the void that fills that? It's the antitrust laws. And like the — with the file rate doctrine, where there is really a presumption that should be against extending it to areas, there is an equal presumption on the flip side of that, that the antitrust laws should not be limited and should not be restricted, particularly in situations where there is no effective remedy by the case here. So I would suggest, Your Honor, and I would like to reserve a minute or two of my time, just maybe one more point before I sit down. There has been a lot of confusion that has been engendered, I think, perhaps by the initial decision of the Judicial Panel on Multidistrict Litigation, whoever decided to do it, to call this whole proceeding in re Western States wholesale natural gas antitrust litigation. This is not wholesale to the people like Abelman and Fairhaven and those class members. It's not like you go into Safeway and you buy a loaf of bread that Safeway has bought from some distributor, and then they put a markup on it, and so there's a wholesale price and then there's a retail price. There is an index. And that index is the basis for most, if not all, of the retail price contracts and the retail price sales that were made to the class members in this State. And that index may include some transactions that are within FERC's jurisdiction, theoretically, but you don't even get to decide whether or not those transactions can affect the price in a damage analysis unless you cross the threshold that the filed rate doctrine applies, which I don't think you can do in this case. And then, moreover, the point about how do you prove damages in this case, it's just like any other antitrust case for price fixing. Damages are what the price would have been to these class members in a competitive market. And the fact that there are other factors out there, if there are at all, which are not appropriate to consider in calculating those damages, is no different than in MCI versus AT&T and other cases going back to the Continental Ore case in which the Supreme Court and circuit courts, including this one, have said, to the extent you can, you disaggregate those and cut the damages accordingly. But to the extent you can't, the defendant bears that burden. Thank you, Your Honors. MR. HARPER. Good morning, Your Honors. Blake Harper on behalf of Texas, Ohio. The reason we split the argument is Texas, Ohio is positioned in a bit of a variant setting because it is a merchant reseller that bought gas on the spot market at the California border or in California for resale in California. Now, much of the arguments that have been made by the retail purchasers have been based on the fact that the California Gallo, the other plaintiffs in our case, and Nevada Power apply equally with respect to resellers such as Texas, Ohio, to the extent that their purchases were non-jurisdictional sales as defined by the statutory authority given to FERC, just like the non-jurisdictional purchases by entities such as retail end users. Now, for example, FERC deregulated the or, I'm sorry, Congress statutorily withdrew FERC's jurisdiction over first sales. We have argued in this case, which again is on a motion to dismiss, and it was on the original complaint that we filed back in November of 2003, that some portion of the purchases by Texas, Ohio in the spot market were non-jurisdictional, unregulated purchases for resale. Kagan. Did you specifically state in the complaint that some of your purchases were first sales? No, we did not, Your Honor. And, you know, I don't think there's a pleading requirement that we need to do that. The It's an affirmative defense. The filed rate doctrine and preemption are both affirmative defenses that the defendants have the burden of establishing. And so as we get into discovery in the case, it's going to be their burden to develop the evidence to establish those defenses. You're telling us now that some of those sales were first sales. That is our belief, Your Honor, and some of those sales conceivably could have involved foreign natural gas as well. So in that context, even though Texas, Ohio is a reseller, it is in the same position as the other plaintiffs in these cases. Now, you know, these areas where the jurisdiction was withdrawn from FERC, all of those withdrawals of the jurisdiction applied to equally to end-users, retail purchasers. Now, I wanted to so I guess the bottom line with respect to Texas, Ohio, is that the complaint here should only be dismissed under the file rate doctrine as it was by Judge Pro if on the face of the matter, it's demonstrable that none of the transactions were subject to FERC jurisdiction. And that simply isn't the case. Did you accept the proposition, and this may be looking down the road if the case survives, but do you accept the proposition with regard to the purchases made by your client that were not first sales, the transactions that are FERC jurisdiction transactions, that it ends there, that your client doesn't have a claim that it can pursue in this form for those purchases? We have asserted, Your Honor, that, well, first off, they've first got to come forward and make that showing. And it's a real open question. I ask the question because if we get persuaded to draw a line there, that's a line that has implications for the remainder of the case. I want to be sure I know what your position is with regard to that line. We have asserted that FERC has not regulated sales at the spot market, and that, therefore, the file rate doctrine should not be applicable to any of those sales. There were no rates filed. There was no oversight by FERC following the Wellhead Deregulation Act, following the Order 547, where the FERC basically said just, you know, you all have blanket certificates. There's really no distinction factually between those transactions and the non-jurisdictional sales, and there's no way to distinguish between the two. And I think it was in partial recognition of that that FERC determined that it was simply going to allow market forces to exist there. And that's why it's so important for antitrust protections to apply, because that's the way we protect that market situation. And that sort of brings us to the notion of preemption, which was not ruled upon by Judge Pearl, but which was argued by the defense. Preemption is a question of congressional intent, and it has to be clear and manifest. And here again, it's a defense, so the defendants have the burden of establishing it. The Natural Gas Act provides no bar to private enforcement of the antitrust laws. In fact, the general objective of the Natural Gas Act is on all fours with the antitrust laws in terms of curbing monopolistic conduct. Now, a lot of the cases that have come down have, with all respect, played fast and loose with the notions of whether it's a wholesale market, whether it's a sale for resale. I would respectfully submit that that isn't really the question. The question is, is this an area where FERC has jurisdiction, and is it an area where their jurisdiction is complete or extensive and exclusive? And the answer to that is it is not. There is a lot of additional regulation that occurs involving these manipulations. You know, there's regulation by the FTC, the Securities and Exchange Commission. The antitrust laws have long been considered a proper complement in this context. And I'm sorry, but I want to preserve a little bit of time for rebuttal. Thank you. Good afternoon, Your Honors. I guess I'm the first person who gets to say that. My name is Joel Kleinman. I represent the Duke Energy defendants. The Duke Energy defendants in this Court, in the lower court, and in any other court in which they get sued about these matters are not first-sellers. FERC is so ruled in an order which is in both sets of our briefs, in Texas, Ohio, and in Ableman. It's my privilege this early afternoon to speak on behalf of the other defendants who are still in these cases, who are also not first-sellers. I speak for Reliant. You have the Reliant order. Reliant is a pipeline affiliate. It is by statute unconstitutional. They are a non-first-seller. I speak on behalf of SEMPRA. For those who live in California, SEMPRA is affiliated with a local gas distribution company. They are a non-first-seller. I speak on behalf of the El Paso pipeline defendants who were added in the second amended complaint in the Ableman case. They are, by allegation in the complaint, non-first-sellers. This case, Texas, Ohio, and the other case, Ableman, are not about first sales. And it is not because the plaintiff's neglected to allege it. It's because as a matter of law, it is not so. What this case is about is gas transportation regulated until this day without amendment under the Natural Gas Act. Both cases are identical. Both complaints make the same allegations. I assume that the Ableman one was copied from the earlier file, Texas, Ohio, that talk about the California border market where the price of natural gas is based in part on a basis differential. Paragraph 38 in Texas, Ohio, 109 in Ableman. It goes on to explain that large industrial users buy bundled natural gas. Paragraph 48 in Texas, Ohio, paragraph 120 in Ableman. It begins to charge unlawful conduct. This action arises from the defendant's conspiracy to manipulate the spot price and basis differential of natural gas with respect to the California market. Texas, Ohio, 40. Paragraph 49 in Texas, Ohio, 109 in Ableman. And then at the beginning of the charging section of their complaints, both sets of plaintiffs tell us that beginning in at least 1999, defendants and their co-conspirators agreed not to compete in the pricing and sale of bundled natural gas in California and in the pricing and sale of interstate natural gas transportation contracts in California. Texas, Ohio, 73. Ableman, 51. It may be that in the Sierra Pacific case, as Mr. Cook told you, their case is not about transportation. This case is. If you would, I would like to spend a moment with the statute, because it will make clear that we are in these cases clearly within FERC jurisdiction. Section 1B, which I don't believe anyone this morning has actually read to you, concerns transactions to which provisions of this chapter are applicable. If your honors wish to read with me, it is in the first page of the statutory appendix in the Appalese brief in Texas, Ohio. The provisions of this chapter shall apply to, first, the transportation of natural gas in interstate commerce, second, to the sale of interstate gas, interstate commerce of natural gas for resale, and third, to the importation or exportation of natural gas in foreign commerce, and I missed the fourth, which is critically important here, and that is to natural gas companies engaging in the exportation of natural gas in foreign commerce. In this case, it's a natural gas company engaged in such transportation or sale. Every defendant in this case is engaged in, is a natural gas company engaged in sales for wholesale. No one denies it. Many of them, like Duke and like Reliant, are engaged in transportation by dint of their affiliateship with transportation companies. If we turn from the statute to the statute, we are in a no-law zone. And the question is, is there a way to answer the question, are we in a no-law zone, or is there an opportunity to go to FERC? I think the most useful way to approach it is to compare this with Lockyer v. FERC. Some call it California v. FERC. The case in which the California attorney general actually went to FERC on a complaint in which this court held, you can get a remedy there, something that none of these plaintiffs have deigned to do. In Lockyer v. FERC, General Lockyer filed a Section 306 Power Act complaint. The analog in the Gas Act is Section 12. He filed in compliance with FERC Regulation 385. 385 applies to complaints both under the Power Act and under the Gas Act, and the FERC Regulation 385 applies to complaints both under the Power Act and under the Gas Act. He alleged that the prices that prevailed in the California markets, not just the ISO and PX markets, but the markets in general, violated Power Act Sections 205E and 206E. They're analogs. He asked Section 4E and 5A, the nature of his complaint. He claimed that jurisdictional sellers in the electricity markets had violated their tariffs by manipulating the market. In our case, we are, as I said, defendants in this case, all jurisdictional sellers. In that case, the tariff that was at issue was the market-based rate authority tariffs. In this case, it is blanket marketing certificate authority tariffs. If you lay them along each other, the individual market-based rate authority tariff that companies filed reads virtually identically to Section 248.402, the blanket marketing certificate authority that FERC has issued. They both allow transactions at negotiated prices. In that case, the claim was manipulation for power, clearly under FERC jurisdiction. In this case, it would be about the basis differential, as they've complained in their complaints in these two cases. This case is about the fact that California in 2001 suffered gas prices at the border which were not readily associated with the prices that prevailed in the basin. And the difference is basis. Now, this Court ruled in Lockyer v. FERC that General Lockyer had stated a valid complaint and that FERC had the power to remediate under Section 309, as well as 204e and 205a, to remediate, including giving retrospective financial relief. I have not heard anyone who's argued here this morning tell you why, notwithstanding these similarities. There is a gap, or we're in no law that would allow for this to happen. So I would submit that the only conclusion in these cases that would be consistent with this Court's decision in Lockyer v. FERC, and indeed perhaps even with the Court's decisions last December in the bilateral contract cases, the opinions of which were written by Judge Berzin, is to affirm the dismissals that Judge Crowe entered. Now, why was this remedy available? The answer is, without prejudging the merits of their complaints and the conduct that they claim, but the defendants committed. FERC made clear in 2003 that its then-existing Gas Act power gave it the ability to order disgorgement and other remedies, and this Court held under the same provisions of the Power Act that a financial remedy was available. In Lockyer v. FERC, this Court observed, because it also had before it in part, I think, the Snohomish v. Dinegy case, the private damages cases, that part of the reason why FERC has to have that power is because there is no way to plead a private damages case in a situation like this that does not run afoul of filed-rate doctrine. And the only way to reconcile that statement with this case is to affirm Judge Crowe. On the question of what people have said before, both FERC and parties in those proceedings, which include my client, it needs to be made clear that FERC has never said it has no remediation power over jurisdictional entities like those who are defendants in the cases in front of Judge Crowe. In fact, in the National Association of Gas Consumers case addressed by prior counsel in an earlier case, FERC held to the contrary. It acknowledged that it has jurisdiction over entities who are defendants in these cases. And it said, as it explained in the Enron Marketing case, that its jurisdiction over the conduct of the entities who are not first sellers, who are jurisdictional sellers like these defendants, authorizes it to take action because manipulative conduct violates the inherent conduct rules that underlie blanket marketing certificate authority. That, given this circuit's jurisprudence in the power field, is hardly remarkable, because in the power field you have, in your opinions, recognized that while the ISO and PX tariffs did not expressly prohibit Fat Boy, Death Star, Get Shorty, any of those things, this Court has held that those types of conduct are prohibited by the implicit requirements of the ISO and PX tariff. One fallacy, I think, of those who have argued for the plaintiffs this morning, and I think it is a fallacy which is implicit in Judge Isi's approach to this problem, and I should say at this point that we certainly appreciate Judge Isi's view that when it comes to wholesalers like Texas, Ohio, the fact that they're wholesalers makes all the difference. And, indeed, there, writing to his colleague Judge Proh's opinion, would agree with it insofar as Texas, Ohio is concerned. But the problem with the perspective that you've been offered is that the perspective you've been offered is to look at the situation solely of the plaintiff and ask what kinds of purchases did they make. It's erroneous because the filed-rate doctrine doesn't ask about the purchaser. The filed-rate doctrine asks about the jurisdiction of the agency. And there's no question that as to the jurisdictional sellers, the agency has jurisdiction over our conduct. That matters in this case for ways that may not be readily apparent. What constitutes a round-trip trade which has no legitimate purpose? From what constitutes a trade of equal or offsetting positions which would be entirely legitimate and in conformance with our obligations under FERC regulation? It's no small, easy matter. We had a hearing about eight months ago where a plaintiff's lawyer got up and said, these defendants were sleeving. These defendants were doing basis swaps. But if you go back to Order 644, FERC used exactly those two kinds of arrangements as illustrations of transactions which have a legitimate business purpose under the Natural Gas Act. The same is true insofar as reporting to the indices are concerned. As Mr. Fogelman said, how you do it is not something as to which FERC has written precisely. They have been precise on your recordkeeping, and indeed the recordkeeping is the only part of the regulations which are, in effect, new. But if you don't allow the agency which supervises the conduct to decide what conduct is unlawful and what is not, you run the severe risk in an antitrust case like this that with an impassioned jury talking about sleeving, basis swaps, you could end up with a judgment which would effectively say that conduct that was lawful led to compensable damages. Excuse me. So is the theory that for these jurisdictional sellers, as you were calling them, entities that sell under FERC's jurisdiction, because FERC has jurisdiction over these sellers, that preempts any antitrust or state claims that buyers might have with respect to non-jurisdictional sales? I was not, if Your Honor, please, speaking to preemption, although I'd be pleased to do so. The fact of the matter is, insofar as these sellers are concerned, we've been subject to jurisdiction of FERC all along, and there's nothing about the NGPA or the Wellhead Decontrol Act that changed our circumstance. And so all of the pre-1978 Supreme Court cases that say, this is off-balance to state regulation, continue to apply here. In fact, that's the point of the Transcontinental Pipeline case. Well, just to clarify, then, what is it that prevents the plaintiffs from bringing an action under antitrust law or state claims? Under state law claims? With respect to their sales, which are not part of FERC's jurisdiction? The reason that these, if I might change your question a little bit, the reason why these purchasers cannot bring state law claims is because the conduct that they're challenging is FERC-regulated conduct. This is a filed-rate doctrine for conduct theory? Is that? Absolutely, Your Honor. And that's what this Court held in Tank. In Tank, what you confronted was a case where a transmission owner complained that the Bonneville Power Agency and a number of other defendants had operated their companion high-transmission networks in a way which violated duties, conduct, duties owed to him. And the Court in that case affirmed the filed-rate dismissal on the grounds that a court can't speculate on what conduct FERC would say was proper or improper in connection with operations in the FERC-regulated electricity transmission market. Our proposition is no different. And indeed, it is even more so here. Because the question of what kinds of transactions that these defendants affected, which is what the plaintiffs are complaining about, they happen to be retail purchasers, or at least some of them do. But for those who are not, as Judge Prost said, what they're complaining about is conduct in the wholesale market. And if, as I submit, FERC would hold that many, if not much, of this conduct was entirely lawful on these jurisdictional sellers' behalf, if you don't enforce the filed-rate doctrine, you will be permitting perhaps a judgment for alleged antitrust injury for acting in a way which FERC finds entirely appropriate in an area which is subject to their exclusive jurisdiction. My client may be the paradigm. FERC has already held it in order that our alleged wash sales are subject to jurisdiction. But if you don't enforce the filed-rate doctrine, what you will be saying is, doesn't matter that FERC did an investigation and reached its conclusions, we're going to let juries in the Federal Districts here go off and do it by themselves. That's notwithstanding the fact that the damages that they want are for implied transportation charges. And if you go back, if you go back to Order 637 in 2000, you will see that FERC does not enforce the filed-rate doctrine. It is all over the basis differential issues and markets, and instead started taking regulatory steps both before the 2000 order, in Order 457, as well as thereafter. And so if at the end of the day what the Court does is return to 1B and ask itself, are there provisions here which the Court has not yet heard of, which are within FERC's jurisdiction, whether it is because we are natural gas companies subject to their jurisdiction, whether it's because insofar as Texas, Ohio is concerned, the case is about sales for resale, if as to all the other cases you hold, it's because those cases are focused or at least include among their damages basis differential, if for any one or more of those reasons, this Court concludes after looking at their complaint that that's what these cases are about, then Your Honor should affirm Judge Prel. Thank you. Thank you. Thank you. Very briefly, Your Honors. First, the question as to whether or not these transactions involve first sales is a question of fact. I heard the representation by counsel that they are not. I would suggest that the appropriate remedy, if that is indeed their position, is that they should have brought a summary judgment motion and established that fact. They have not done so. And I would suggest that the fact that they are subject to the jurisdiction of FERC, or that they are an affiliate of a pipeline or a local distribution company, doesn't automatically mean that all of their transactions are not first sales. That's not what the question is. That's not what the statute says. That's not how first sales are defined. They have to, in fact, FERC in the NAGC case said that first sales were all sales in the chain from the producer to the ultimate consumer, or first sales, unless the gas is purchased by an interstate pipeline, an intrastate pipeline, or local distribution company. So their status is not enough. There has to be a purchase in there. The second point I wanted to make is that there may have been some inartful use of language in the Texas, Ohio case with respect to bundling. It is not our intention to be addressing transportation. What we meant to suggest by the use of that term was that in the context of an unbundled market is that, you know, there is a need to address transportation. Those transactions were transactions involving gas and not transportation. With respect to 1B, let me just say that in the Wellhead Decontrol Act of 1989, it was established, and this is the language, for purposes of Section 1B of the Natural Gas Act, the provisions of the Natural Gas Act and the jurisdiction of the commission under such act shall not apply to any natural gas solely by reason of any first sale of natural gas. That's what 1B now says following deregulation under the Wellhead Decontrol Act. Now, let me just address very briefly, and I know our time is short. Well, it's more than short. It's now a minute over. So you've got another 30 seconds. Okay. Thank you. The appellees mentioned that there's no relief from FERC and referenced a lot of cases, Judge Ishii's opinion, the J.P. Morgan case by Judge Proulx. The amendments to the Blanket Sales Certificates, Order 644, only apply to sales for resale in interstate commerce if they are within the jurisdiction of FERC. And in the final rule, Order 670, which prohibited energy market manipulation, FERC made clear the limited nature of these new regulations, quote, absent a nexus to a jurisdictional transaction, fraud or manipulation in a non-regulatory manner, and non-jurisdictional transactions, as is a first sale or retail sale, is not subject to the new regulations. That's FERC's view. Thank both counsel, all counsel for the argument. Indeed, thank counsel generally this morning for perhaps voluminous, but very well-written briefs and articulate arguments. The cases just heard, Texas, Ohio, and Abelman Art Gas, are submitted, and we are in recess. Thank you.
judges: B. Fletcher, Clifton, Ikuta